**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DENNIS C. RAU and ELIZABETH RAU | : | CIVIL CASE NO. |
|     Plaintiffs, | : | 3:11-CV-01772 (JCH) |
| | : | |
| v. | : | |
| | : | |
| HARTFORD LIFE & ACCIDENT INSURANCE | : | MAY 13, 2013 |
| COMPANY | : | |
|     Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 30)**

**I.   INTRODUCTION**

Plaintiffs Dennis C. Rau, the Administrator of the Estate of Katie E. Rau, and Elizabeth Rau, the named beneficiary under Katie Rau's insurance policy (collectively, "Rau"), bring this suit against defendant Hartford Life and Accident Insurance Company ("Hartford"). In Count Four and Count Nine, the Raus each individually allege that Hartford has violated the Employee Retirement Income Security Act (hereafter "ERISA"), 29 U.S.C. § 1001, et seq., by failing to pay benefits to which the plaintiffs claim they are entitled, in violation of 29 U.S.C. § 1132. In Count Five and Count Ten, they bring a claim for breach of fiduciary duties, in violation of 29 U.S.C. § 1104.[1] Before the court is Hartford's Motion for Summary Judgment on the Administrative Record for Judicial Review (Doc. No. 30).

**II.   FACTS**

Katie E. Rau was an employee of Davita, Inc. ("Davita"). Pl. Local Rule ("L.R.") 56(a)(2) St. ¶ 1. Hartford issued group insurance policy number GL-675580 to Davita, which provides coverage options to qualified employees for life insurance, accidental

---

[1] The court dismissed Counts One, Two, Three, Six, Seven, and Eight in its May 11, 2012 Ruling. See (Doc. No. 27).

1

death and dismemberment, supplemental life insurance, and supplemental dependent life insurance ("the Policy").  Id. at ¶ 2.  The Policy funds benefits under the Group Basic Term Life, Supplemental Dependent Life, Supplemental Term Life, Basic Accidental Death and Dismemberment Plan ("the Plan").  Id. at ¶ 3.  The ADD Plan is an employee welfare benefit plan subject to ERISA.  Id. at ¶ 4.

Katie Rau was a participant in the Plan.  Id. at ¶ 5.  Elizabeth Rau is the named beneficiary under the Policy and of the Plan, as the Policy provides that, "Accidental Death and Dismemberment Benefits will be paid in accordance with the life insurance Beneficiary Designation."  Id. at ¶ 6.  Dennis C. Rau is the Administrator of the Katie Rau's estate.  Id. at ¶ 7.

The Policy contains "ERISA Information," including an introductory paragraph that states that the Plan, into which the Policy is incorporated, "has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all plans and provisions of the Policy."  Id. at ¶ 8.  Other sections of the Policy—namely the provision within the "ERISA Information" section entitled, "Claims Procedures" and the "Policy Interpretation" section—set forth the same language regarding the Insurance Company's discretion in determining benefits and construing terms and provisions of the Policy.  Id. at ¶¶ 9-10.

The Policy includes an "Accidental Death and Dismemberment" benefit provision, which states that benefits are payable "if you sustain an injury which results in [the loss of life] within 365 days of the date of accident," and the insurance company receives proof of loss in accordance with the Proof of Loss provision.  Id. at ¶ 11.  The Policy defines "injury" as "bodily injury resulting: (1) directly from an accident; and (2)

independently of all other causes; which occurs while you are covered under the Policy." Id. at ¶ 12. The Policy contains an "Exclusions" section that applies to all benefits other than Life Insurance, Accelerated Benefit. Id. at ¶ 13. That "Exclusions" section states that the "Policy does not cover any loss caused or contributed to by: . . . Injury sustained while intoxicated." Id. According to the Policy, "intoxicated" means: "(1) the blood alcohol content; (2) the results of other means of testing blood alcohol level; or (3) the results of other means of testing other substances; that meet or exceed the legal presumption of intoxication, or under the influence, under the law of the state where the accident occurred." Id. at ¶ 14.

Katie Rau died on October 27, 2010. Id. at ¶ 15. Her death was documented in a Connecticut Uniform Police Accident Report and a Report of Investigation and Toxicology Report of the Connecticut Office of the Chief Medical Examiner. Id. at ¶ 16. According to the police report, on October 27, Katie Rau met a friend, Chris Fowler ("Fowler"), at a restaurant, where she drank a glass of wine and a couple of shots of alcohol called Café Patrone. Id. at ¶ 17. She did not eat any food. The two then went to a bar—at which Katie already appeared intoxicated, according to the bartender—where Katie drank blackberry brandy. Id. She was eventually cut off by the bartender, and the two left the bar around 11:40 p.m. in Fowler's pick-up truck, which he was driving. Id. While the truck was moving, Katie pulled herself from the passenger seat into a seated position in the open window frame of the passenger door. In this position, her entire torso was outside the vehicle. Id. Only her lower legs and feet were inside the truck. Id. Katie told Fowler, "look what I can do." Id. As Fowler told her to get back in the truck, Katie fell backwards out of the truck. She struck her head on the

pavement, sustaining a fatal injury.  Id.  The autopsy and toxicology report indicated that Katie tested positive for alcohol and that her blood alcohol level was 0.3%.  Id. at ¶¶ 18-19.

Following Katie's death, her mother, Elizabeth Rau, filed a claim with Hartford as her beneficiary, seeking the payment of $111,000 in basic life insurance benefits and an additional payment of $111,000 in ADD benefits under the Plan.  Id. at ¶ 20.  Hartford approved the life insurance benefit claim and paid the $111,000 plus accrued interest.  Id. at ¶ 21.  By letter dated April 22, 2011 to George Law—who Hartford believed was Elizabeth Rau's counsel, as he had previously sent a letter of representation to Hartford—Hartford denied the claim for ADD benefits, explaining that it based its decision on the claim file as a whole, but particularly the police report, toxicology report, medical examiner's report, and death certificate.  Id. at ¶¶ 22, 26.  Hartford explained that, at the time of her death, Katie was intoxicated under Connecticut state law and that, under the exclusion, her beneficiary was not entitled to ADD benefits.  Id. at ¶¶ 23-25.

Following the denial of the claim, Hartford received an August 3, 2011 letter from Attorney Timothy Brignole.  Id. at ¶ 27.  In the letter, Attorney Brignole claimed that Katie's death was caused by a defective or broken interior door handle mentioned in the police report, not intoxication.  Id.  The Raus claim that Attorney Brignole requested in this letter that Hartford re-evaluate its decision to deny the claim.  Id. at ¶ 41.  The police report states that the door handle to which Attorney Brignole refers was broken prior to the incident.  Id. at ¶ 27.

By letter to Hartford dated April 16, 2011, Attorney Brignole claimed to represent Elizabeth Rau. Id. at ¶ 28. According to the Raus, he also contacted Hartford on April 15. Id. at ¶ 43. Hartford employee Laura Scott ("Scott") left a message for Attorney Brignole in which she explained that Hartford was aware of the broken handle inside the car at the time it denied the claim. Id. at ¶ 28. Scott informed Attorney Brignole to provide additional information; otherwise, the claim would remain denied. Id. No additional information was provided. Id. at ¶ 29.

The Raus claim that the policy states that, upon written request, the insurer should perform a full and fair review of a claim denial and provide a written response of their final decision on the claim. Id. at ¶ 45. Instead, according to the Raus, Hartford only indicated in an internal claim review that, "we have received a copy of the police report and letter from atty indicating broken grip handle does not change our decision of the claim." Id. at ¶ 46.

### III.   STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV.   DISCUSSION

### A. Failure to Pay Benefits

When a party challenges a denial of benefits under section 1132(a)(1)(B), the court applies the "arbitrary and capricious" standard in cases where the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Both parties agree that Hartford had such discretionary authority. See Pl. Mem. in Supp. Mot. Summ. J. (Doc. No. 30) at 3-4; Def. Mem. in Opp. Mot. Summ. J. (Doc. No. 31) at 4.

Under the "arbitrary and capricious" standard of review, the court "may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence[,] or erroneous as a matter of law.'" Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995) (citing Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)). "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control."[2] McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 132 (2d Cir. 2008); see also Pagan, 52 F.3d at 442 ("This scope of review is narrow; thus we are not free to substitute our own judgment for that of the . . . [insurer] as if we were considering the issue of eligibility anew.").

However, when an administrator both evaluates and pays benefits claims, a conflict of interest exists that may be weighed as a factor in determining whether there is an abuse of discretion. McCauley, 551 F.3d at 131-32. Any conflict of interest does not change the standard of review from deferential to de novo; it merely requires the reviewing judge to take account of the conflict when determining whether the insurer abused its discretion. Id. at 132. "'[W]here [an] administrator has taken active steps to reduce potential bias and promote accuracy, for example, by walling off claims administrators from those interested in firm finances,' a structural conflict of interest 'should prove less important (perhaps to the vanishing point).'" Fortune v. Group Long

---

[2] By citing to Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246, 256 (2d Cir. 2004), the Raus argue that, if there are ambiguities in the language of an insurance policy that is part of an ERISA plan, they are to be construed against the insurer. See Pl. Mem. in Opp. (Doc. No. 31) at 8. However, in Critchlow, the district court reviewed the insurer's denial of benefits de novo because the policy did not contain language giving the insurer discretion to interpret the policy's terms. Critchlow, 378 F.3d at 253. The rule of contra proferentum applied in Critchlow—construing any ambiguity against the drafter of the policy—is limited to those occasions in which the court reviews an ERISA plan de novo. Pagan, 52 F.3d at 443. Where, as here, the court applies the "arbitrary and capricious" standard, "the rule of contra proferentum is inapplicable." Id. at 444.

7

Term Disability Plan for Employees of Keyspan Corp., 391 Fed. Appx. 74, 79 (2d Cir. 2010) (quoting Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008)).  Conflicts of interest should prove more important when there are circumstances to suggest a higher likelihood that the conflict affected the benefits decision.  Glenn, 554 U.S. at 117.  Evidence that a conflict affected a decision may be categorical (such as 'a history of biased claims administration') or case specific (such as an administrator's deceptive or unreasonable conduct)." Durakovic v. Building Service 32 BJ Pension Fund, 609 F.3d 133, 139 (2d Cir. 2010).

      Hartford denied the Rau claim for ADD benefits based on an application of the "Exclusions" section, which states that the "Policy does not cover any loss caused or contributed to by: . . . Injury sustained while intoxicated."  Pl. L.R. St. ¶ 12.  Hartford interpreted the exclusions section to mean that beneficiaries are not entitled to ADD benefits if the decedent was intoxicated at the time of the injury, regardless of whether or not that intoxication caused the injury.  Def. Mem. in Supp. Mot. Summ. J. at 5-6.  The Raus argue that the language is ambiguous and could mean one of three things: benefits are not applicable if (1) the insured is injured while intoxicated, but the injury was not caused by the intoxication (the defendant's interpretation); (2) the insured was injured because of intoxication and the intoxication was the sole proximate cause or concurrent with another cause; or (3) the insured was injured and the intoxication was the superseding cause of the injury.  Pl. Mem. in Opp. Mot. Summ. J. at 9.  According to the Raus, Hartford's interpretation is unreasonable because it "allows it to deny a claim simply because it can point to some evidence that the insured may have been intoxicated at the time of the injury," including in "absurd" circumstances such as when

"an intoxicated individual is standing on a sidewalk and is struck by a car that drives onto the sidewalk." Id. at 10.  Based on this unreasonable reading, according to the Raus, the court should find Hartford's decision to be "arbitrary and capricious."

First, the Raus argue that Hartford's interpretation violates the principle that, "when addressing the issue of proper interpretation of a clause that excludes a particular condition or occurrence from the coverage provided by the policy, the [c]ourt must read the exclusion clause narrowly rather than expansively." Id. at 10.  However, the Raus again misconstrue Critchlow to reach this conclusion.  In Critchlow, the court considered de novo what the appropriate interpretation of the insurance policy was. Critchlow, 378 F.3d at 256.  The court stated that the rule of contract interpretation—that directs the court to construe language of an insurance policy against the insurer—applies with extra force in the context of exclusionary clauses.  Id.  Yet, as discussed, supra, when the court applies the "arbitrary and capricious" standard, the rule of contra proferentum does not apply.  See supra, n.2.  Unlike in Critchlow, the court is not considering de novo how to "interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." Critchlow, 378 F.3d at 256.  The court is, instead, determining whether Hartford abused its discretion in interpreting the exclusion as it did.  Importantly, Hartford is under no obligation to construe an "exclusion clause . . . narrowly rather than expansively."  Id.

The court concludes that Hartford did not abuse its discretion by interpreting the exclusion to apply to any injury sustained while the decedent was intoxicated, regardless of whether that injury was caused by the intoxication.  Had the drafters of the policy intended to require a causation element, they could have written the exclusion to

apply to injury sustained <u>as a result of</u> intoxication, rather than to "injury sustained while intoxicated." Policy at 21.  When the drafters of the policy wanted to include a causation requirement, they did so explicitly.  <u>See</u> Policy at 25 (defining an "injury" as "bodily injury resulting directly from an accident; and independently of all other causes").  The court reads the plain language of the exclusion to apply to <u>all</u> injury sustained when a decedent was intoxicated.  Therefore, it cannot conclude that Hartford abused its discretion in interpreting the exclusion in such a manner as to deny Elizabeth Rau's claim.

Furthermore, other courts have considered similar exclusion policies and held that the administrators in those cases did not abuse their discretion in failing to require a causation element.  In <u>Graham v. Western Kentucky Navigation, Inc.</u>, 229 F.3d 1151(6th Cir. 2000), the relevant exclusion denied payment for "[e]xpenses, charges or liabilities incurred as the result of or in the commission of a felony or misdemeanor (other than traffic violations), if convicted of driving under the influence of alcohol or any illegal substance, or while legally intoxicated."  <u>Graham</u>, 229 F.3d at *1.  The administrator in that case construed the exclusion to apply to an injury sustained by the passenger in a car, as a result of an automobile accident, when the passenger (not the driver) was intoxicated.  <u>Id.</u>  Although the plaintiff in <u>Graham</u> argued that the exclusion included a causation element, the court found the administrator's interpretation of the plan reasonable under the "arbitrary and capricious" standard, regardless of whether the "interpretation simply is unfair."  <u>Id.</u> at *3.  In <u>Bickel v. Sunbelt Rentals, Inc.</u>, 2010 WL 3938349 (D. Md. Oct. 6, 2010), the relevant exclusion applied to "an injury resulting from a motor vehicle accident in which a covered person has a blood alcohol

10

concentration equal to or in excess of the level established by the laws of the state in which the accident occurred for driving while impaired." Bickel, 2010 WL 3938349, at *1. The court held that the exclusion was "clear and unambiguous" in not including a causation element. According to the court, while the plan "could have tied ineligibility for benefits . . . to a finding that the accident was caused by the participant's intoxication . . . it did not do so." Id. at *4.

Furthermore, to the extent that the Raus argue that Hartford was operating under a conflict of interest such that this court should find it abused its discretion in interpreting the exclusion as it did, the court disagrees. See Pl. Mem. in Opp. Mot. Summ. J. at 4. The Raus argue that Hartford operates under a conflict of interest because it both evaluates and pays benefits claims. Id. However, the plaintiffs have not introduced any evidence to suggest that this conflict affected Hartford's decisionmaking.[3] See Durakovic, 609 F.3d at 139 ("The weight properly accorded a Glenn conflict varies in direct proportion to the 'likelihood that [the conflict] affected the benefits decision.'"); see also Fortune, 391 Fed. Appx. at 79 (stating that the plaintiff "has adduced no evidence indicating that Hartford has a history of biased claims administration . . . [nor was the] evidence so thin or unsound as to call into question the legitimacy of Hartford's determination of this particular claim").

---

[3] The Raus argue throughout their brief that Hartford acted improperly when it "specifically excluded references to the broken grip handle from its statements regarding the police report." Mem. in Opp. Mot. Summ. J. at 6. To the extent that the Raus may be arguing that this evidences Hartford's conflict of interest, the court does not agree because (1) whether or not the grip was broken is irrelevant if the exclusion applies to all injuries suffered while a decedent is intoxicated; and (2) the report indicated that Katie fell backwards out of the vehicle for "reasons unknown," which is an accurate statement considering that the police report indicates that the grip was broken prior to the incident. See Administrative Record at 68.

11

Hartford, meanwhile, has introduced evidence to suggest that Hartford has procedures in place to "abate the risk" of conflict. Id. at 138. According to Pat Hipsher ("Hipsher"), the Team Leader for Hartford who had the final say over the Rau benefit decision, both claims analysts—who make the initial decision whether to accept or deny a claim—and team leaders—who review and approve decisions regarding benefits claims—do not receive remuneration, bonuses, awards, recognition, or other incentives to deny accidental death claims. Hipsher Decl. ¶¶ 4-6. According to Hipsher, she did not consider the financial impact of denying or approving the claim nor did she discuss the benefit determination with anyone who works in Hartford's financial or underwriting departments. Id. at ¶ 4. Further, she alleged that the claims analyst who made the initial determination—Laura Scott—was evaluated based on the accuracy of her decision-making regardless of whether her decision resulted in an award or denial of benefits." Id. at ¶ 6. Such evidence supports a determination that the potential conflict merits little weight. Fortune, 391 Fed. Appx. at 79 (finding no error in the district court's decision to accord "the conflict little weight given the procedures Hartford had implemented to wall off claims examiners from those employees concerned with the company's finances").

Furthermore, "conflicts are but one factor among many that a reviewing judge must take into account" when determining whether the insurer abused its discretion. Id. Because the court concludes that the plain language of the policy supports Hartford's interpretation of the exclusion, even were the conflict to factor into the court's determination, it could not overturn Hartford's denial of benefits as arbitrary and

12

capricious. Therefore, Hartford's Motion for Summary Judgment as to the Raus' claim for denial of ERISA benefits is granted.

B. Breach of Fiduciary Duty

In Counts Five and Ten, the Raus allege that Hartford's failure to pay the ADD benefits, as well as Hartford's reasons for denying payment, constitute a violation of Hartford's fiduciary duties, in violation of section 1104 of title 29 of the United States Code. Hartford moves for summary judgment on these claims because (1) they are duplicative of the Rau's claims for denial of benefits; (2) the court cannot award monetary damages; and (3) there was no breach of fiduciary duty. Def. Mem. in Supp. Mot. Summ. J. at 10.

ERISA's fiduciary standards are set forth at 29 U.S.C. § 1104. Pursuant to 29 U.S.C. § 1109, any person who is a fiduciary under ERISA may be liable for a breach of his fiduciary duties. See 29 U.S.C. § 1109. ERISA's civil enforcement section, 29 U.S.C. § 1132, provides that plan participants and beneficiaries can bring claims for breach of fiduciary duties under section 1132(a)(2) and section 1132(a)(3). See 29 U.S.C. § 1132.

Hartford argues that the court must grant summary judgment on the breach of fiduciary duty claims under ERISA section 502(a)(3) because they are identical to the claims for denial of benefits under ERISA section 502(a)(1)(B). Def. Mem. in Supp. Mot. Summ. J. at 12-13. According to Hartford, "a party cannot prevail on a fiduciary breach claim when they have the right to maintain a benefits claim under ERISA." Id. at 11 (citing Varity Corp. v. Howe, 516 U.S. 489 (1996); Frommert v. Conkright, 433 F.3d 254 (2d Cir. 2006)). The Raus argue that the Varity court, rather than eliminating the

right to maintain a breach of fiduciary duty claim when another potential remedy is available, merely limited the remedy available for a breach of fiduciary duty claim to "such equitable relief as is considered appropriate." Pl. Mem. in Opp. Mot. Summ. J. at 13. According to the plaintiffs, because they seek "such other and further relief as this court deems just and proper," the court may fashion any equitable remedy that it deems appropriate to remedy a breach of fiduciary duty. Id. at 15.

The parties' arguments as to what remedies are available is a moot point because there is no evidence to allow a reasonable jury to find that Hartford breached its fiduciary duty in administering the ADD benefits. The Raus appear to bring their breach of fiduciary duty claims against Hartford under two theories: for failing to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries—by interpreting the "Exclusions" section to deny the claim for ADD benefits—and for failing to make a full and fair review of their decision despite Raus' request for such a review. Pl. Mem. in Opp. Mot. Summ. J. at 15.

As to the first theory, the court has already concluded that Hartford did not act unreasonably in interpreting the "Exclusions" section in such a manner as to deny ADD benefits to Elizabeth Rau ( as Katie Rau's beneficiary). See Markes v. Aluminum Co. of America, 114 F.Supp.2d 108, 110 (N.D.N.Y. 2000) (holding that the defendant did not violate its ERISA imposed fiduciary duties because its interpretation of the Plan's terms "was not arbitrary or capricious and was, in fact, reasonably consistent with the Plan's terms"); see also O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc., 37 F.3d 55, 61 (2d Cir. 1994) ("ERISA does not require, however, that a fiduciary resolve every issue of interpretation in favor of the plan beneficiaries. . . The fact that

14

the . . . participants would have preferred a contrary result does not render the Committee's action arbitrary and capricious."). Therefore, to the extent the Raus are bringing a claim based on this theory, summary judgment is granted in favor of Hartford.

As to the second theory, the Raus argue that, "Section 1132(a)(3) permits an action 'to enjoin any act or practice which violates any provisions of this subchapter or the terms of the plan.'" Pl. Mem. in Opp. Mot. Summ. J. at 16. Because the terms of the plan state that, "an insurer will, upon written request, perform a full and fair review of a claim denial and provide a written response of their final decision of the claim," and because Hartford did not provide a written response to the Raus' request for review of the denial, according to the Raus, Hartford breached its fiduciary duty. This claim for breach of fiduciary duty is, in essence, a claim that Hartford denied the Raus a full and fair review to which they were entitled under ERISA section 502(3). Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 630 (2d Cir. 2008).

However, this claim fails as well. A failure to abide by the appeal procedure is not actionable unless "the failure of the Fund to follow its appeal procedures deprived . . . [the plaintiffs] of any . . . 'core requirements'" of review, which include "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." Militello v. Central States, Southeast and Southwest Areas Pension Fund, 360 F.3d 681, 690 (7th Cir. 2004). The evidence shows that Hartford indicated in an internal claim review that, after rendering its decision, it received the letter from the Raus' attorney mentioning the

15

defective handle grip along with a copy of the police report.[4]  Pl. L.R. 56(a)(2) St. ¶ 46. Hartford, in spite of that evidence, did not change its decision (because whether or not the handle grip caused Katie Rau to fall from the truck, she was intoxicated at the time of the injury, thus precluding her from receiving the ADD benefits).  Id.  Therefore, even though Hartford did not provide the Raus with a written response to their request for review, there is evidence that Hartford considered their request for re-evaluation and, therefore, there is no evidence that Hartford deprived the Raus of any "core requirements" of review.  Furthermore, even were the court to find that the Raus did not receive a "full and fair review," the typical remedy is remand for further administrative review.  Krauss, 517 F.3d at 630.  Where "administrative remand would be futile," plaintiffs are not entitled to relief for breach of fiduciary duty.  Id.  Evidence regarding the grip handle had no bearing on Hartford's denial of the Raus' claim.   Thus, even were Hartford to reconsider the evidence again, there would be no basis for a different conclusion.  Therefore, Hartford's Motion for Summary Judgment is granted as to the Raus' claim for breach of fiduciary duty pursuant to ERISA.

**V.     CONCLUSION**

For the foregoing reasons, defendant's Motion for Summary Judgment (Doc. No. 30) is **GRANTED**.  The Clerk is directed to close the case.

---

[4] Hartford reviewed the police report in its initial review.  AR 121.  Attorney Brignale merely "brought the reference [to the handle grip] in the police report to the attention of the defendant" in his letter requesting a re-evaluation of Hartford's decision.  Pl. L.R. 56(a)(2) St. ¶¶ 41-42.

**SO ORDERED.**

Dated at New Haven, Connecticut this 13th day of May, 2013.

                                          /s/ Janet C. Hall
Janet C. Hall
United States District Judge